### 6635

### CHARLES v. ATLANTIC COAST LINE R. R. CO.

1. CARRIER—FREIGHT.—From evidence to the effect, a terminal carrier collected freight charges on the whole number of packages of an interstate shipment, and marked the packages short, it may be concluded the packages *short* were lost on its line.

2. IBID.—IBID.—EVIDENCE.—Freight bill showing amount of freight charges collected, number of packages shipped, and initials of alleged consignor, coupled with evidence of consignee that he had only bought one bill of goods from alleged consignor and had paid him for them, is admissible in action against terminal carrier for loss of the goods, and casts burden on terminal carrier of showing the loss did not occur on its line. But bill of lading issued by initial connecting carrier, and bill of the goods shipped, without more, are not admissible.

3. IBID.—IBID.—IBID.—In action against carrier for loss of goods, contract of purchase is a collateral matter, and parol evidence is admissible to prove it, without producing the written order and its acceptance.

4. IBID.—IBID.—CONSTITUTIONAL LAW.—The act, 24 stat., 81, providing a penalty for not adjusting loss of or damage to an interstate shipment of freight is not violative of the interstate commerce clause of the Federal Constitution, when applied to loss of or damage to interstate shipment of freight occurring on a line of terminal carrier.

Before GAGE, J., Florence, July, 1906.    Affirmed.

Action by R. Keith Charles against Atlantic Coast Line R. R. Co. From Circuit order, affirming judgment of Magistrate R. S. Smith, defendant appeals.

*Messrs. Willcox & Willcox* and *Henry E. Davis,* for appellant, cite: *It is error to admit parol evidence of contract in writing to purchase goods:* 2 Bail., 324; 1 Bail., 542; 1 Speer, 192; 68 S. C., 101; 4 Rich., 241; 2 Brev., 466; 4 Speer, 78; 2 Rich., 144; 6 S. C., 72; 13 S. C., 397; 21 S. C., 429; 22 S. C., 198; 35 S. C., 312; 59 S. C., 590; 43 S. C., 95; 52 S. C., 82. *To make available the presumption of loss on terminal carrier, consignee must show delivery to initial carrier in good order:* 66 S. C., 479; 3 Hutch. on Carriers,

sec. 1348; 4 Ell. on R. R., sec. 1450; 6 Cyc., 490. *Bill of lading not admissible until proved:* 58 S. C., 253; 73 S. C., 66; 115 Fed. R., 678; 17 Cyc., 425; 1 Green. on Ev., sec. 575a. *After holding the penalty act invalid as against interstate shipment, the judgment should have been reversed:* 196 U. S., 194; 201 U. S., 321.

*Messrs. George Galletly* and *J. W. Ragsdale,* contra, cite: *Parol evidence of a collateral fact is admissible without producing the writing:* 2 Bail., 324; 1 Speer, 192; 43 S. C., 95; 52 S. C., 82; 59 S. C., 470. *In this action under the statute it is not necessary to prove execution of the bill of lading:* 63 S. C., 244.

August 31, 1907. The opinion of the Court was delivered by

MR. JUSTICE JONES. This action was brought in a magistrate court to recover the value of four sacks of rice alleged to have been shipped from New Orleans, La., by Martin J. Wynne to the plaintiff at Timmonsville, S. C., and to have been lost while in the possession of the defendant carrier, and also to recover fifty dollars' penalty for failure to adjust and pay the claim within ninety days as prescribed by the act of February 23, 1903. The magistrate gave judgment against defendant for the amount claimed, $68.48, which judgment, on appeal, was affirmed by the Circuit Court.

We notice first appellant's seventh and eighth exceptions alleging error in finding that the rice sued for was lost while in the possession of the defendant, there being no testimony whatever tending to show such fact. The Circuit Court found that "the defendant presented to and collected from the plaintiff a freight bill for thirty sacks of rice and marked on the bill '4 sacks short,' * * * that it was warrantable to conclude that the four sacks of rice did come into the possession of the defendant company, for it collected the freight on the four sacks, and

declared that the rice was missing. Enough was proven to cast on the defendant company the burden of proving that when the shipment reached its line four sacks were then missing. The defendant alone knew the fact and it did not prove it."

The plaintiff was the only witness examined in the case, and his testimony warranted the conclusion of the Circuit Court, if his testimony on this point was admissible.

The fifth exception charges that it was error to admit in evidence the freight bill, Exhibit F, on the ground of irrelevancy. It appears from the exhibit that defendant collected from plaintiff thirteen and 50-100 dollars freight for transporting "30 pkts. Rice," and that the consignor was M. J. W., and that four sacks were short. Plaintiff testified that in August, 1905, he ordered Martin J. Wynne, of New Orleans, to ship thirty bags of rice, and paid him for the same, that he paid the freight for thirty bags, and received only twenty-six. There was no evidence of any other order by plaintiff for rice or shipment of rice to plaintiff during the period involved in the controversy. The freight bill and its payment with this statement indorsed thereon was clearly relevant. It tended to show a single shipment of thirty bags of rice to plaintiff by one whose initials were the same as those of the alleged shipper, and that charge was made by defendant for transporting that number of bags, coupled with an admission that four were missing. This was at least sufficient to make out a *prima facie* case of loss while in the possession of defendant, and to cast upon defendant the burden of showing that the loss did not occur on its line. *Willett* vs. *Ry.*, 66 S. C., 478; *Walker* v. *Ry.*, 76 S. C., 309.

The foregoing conclusion renders it immaterial to consider the third and fourth exceptions to the admission of testimony by the magistrate, for it may be conceded that it was error to admit in evidence a bill of lading purporting to be issued by the Louisville and Nashville Railroad Company for thirty sacks of rice, consigned by Martin J. Wynn to

plaintiff, without some proof that it was in fact issued to the consignor by an authorized agent, and that it was also error to allow in evidence a bill for thirty packages of rice rendered to plaintiff by Martin J. Wynne, dated August 23d, 1905, containing the words "shipped via L. & N. Rd.," being the mere statement of Martin J. Wynne not examined in this case, still the error was harmless as this testimony may be stricken from the record and leave undisputed testimony sufficient to sustain a judgment for the loss of the goods while in defendant's possession. Section 368 of the Code requires that on appeals from magistrate's court, judgment should be rendered according to the justice of the case without regard to technical errors and defects which do not affect the merits.

The first and second exceptions allege error in permitting plaintiff to testify that he had purchased thirty bags of rice from Martin J. Wynne without producing the written order and acceptance therefor admitted to be in existence. This not being a suit between plaintiff and Martin J. Wynne touching the purchase of the rice and defendant's liability being dependent, not upon such contract of purchase, but upon its possession for transportation of goods consigned to plaintiff, the contract in question involved merely a collateral matter as to which parol testimony was admissible. *Elrod* v. *Cochran,* 59 S. C., 470, 38 S. E., 122.

The ninth exception assigns error in not reversing the judgment of the magistrate for the statutory penalty, after having held that the claim in question arose out of an interstate shipment and that the penalty statute was invalid as to interstate shipments. What the Circuit Court really held was that the terms of the *proviso* of the act of 1903 were invalid in so far as they refer to commerce between the States, under the authority of *Central of Georgia R. R.* v. *Murphey,* 196 U. S., 194, but that defendant could not avail itself of the invalidity of this *proviso,* as the evidence showed that defendant was in possession of the goods lost. In other words, that the penalty

statute of 1903 does not violate the interstate commerce law in so far as it applies to the common carriers in this State, in whose possession the goods are lost or damaged.

The Georgia statute, which was condemned in the Murphey case, as an unlawful interference with interstate commerce, imposed upon the initial or connecting carrier, as a condition of availing itself of a valid contract of exemption from liability beyond its own line, the duty of tracing the freight and informing the shipper in writing when, where and how and by what carrier the freight was lost, damaged or destroyed, and of giving the names of the parties and their official position, if any, by whom the truth of the facts set out in the information can be established. The distinction between the Georgia statute and our statute, section 1710, is pointed out in *Skipper* v. *Seaboard Air Line*, 75 S. C., 276, which sustained section 1710 as not violative of interstate commerce.

We are, however, not now to consider the validity of section 1710, but we are to consider the validity of the act of 1903, 24 Stat., 81, as applied to interstate shipments. The statute by its title is "An Act to regulate the manner in which common carriers doing busines sin this State shall adjust freight sharges and claims for loss of or damage to freight." Section 2 provides "That every claim for loss of or damage to property while in the possession of such common carrier shall be adjusted and paid within forty days, in case of shipments wholly within this State, and within ninety days, in case of shipments from without this State, after the filing of such claim with the agent of such carrier at the point of destination of such shipment: *Provided,* That no such claim shall be filed until after the arrival of the shipment or of some part thereof at the point of destination, or until after the lapse of a reasonable time for the arrival thereof. In every case such common carrier shall be liable for the amount of such loss or damage, together with interest thereon from the date of the filing of the claim therefor until the payment thereof. Failure to adjust and pay such claim within the

periods respectively herein prescribed shall subject each common carrier so failing to a penalty of fifty dollars for each and every such failure, to be recovered by any consignee or consignees aggrieved in any Court of competent jurisdiction: *Provided,* That unless such consignee or consignees recover in such action the full amount claimed, no penalty shall be recovered, but only the actual amount of the loss or damage, with interest as aforesaid: *Provided, further,* That no common carrier shall be liable under this act for property which never came into its possession, if it complies with the provisions of section 1710, vol. 1, of the Code of Laws of South Carolina, 1902."

The last *proviso,* as the Circuit Court correctly held, has no application to carriers into whose possession the goods have come. Construing the statute in *Seegers* v. *Ry.,* 73 S. C., 71, 73, 52 S. E.,797, the Court said: "The duty to make prompt settlement for loss or damage to goods is but an incident of the duty to transport and deliver safely and with reasonable diligence. The statute in question was designed to effectuate an important public purpose, viz: to compel the common carrier to perform with reasonable diligence the duty which peculiarly appertains to his business as a carrier of freight. The penalty is but a means to that end."

While it is not easy to define the exact limits of the operation of State laws as affecting interstate commerce, we have no hesitation in saying that the statute in question, as it affects carriers doing business in this State, who fail or refuse to adjust and pay the loss of or damage to goods while in their possession, is no unlawful interference with interstate commerce, even as applied to an interstate shipment. The penalty imposed is for a delict of duty appertaining to the business of a common carrier, and in so far as it may affect interstate commerce, it is an aid thereto by its tendency to promote safe and prompt delivery of goods, or its legal equivalent—prompt settlement of proper claim for damages. No penalty can attach except upon the establishment in a Court of a default of duty imposed by statute. The statute

does not attempt to regulate intersate commerce and imposes no tax or burden thereon. It is supported by the general principle declared in *Sherlock* v. *Alling,* 93 U. S., 89, 104, and enforced in *Smith* v. *Alabama,* 124 U. S., 465, and *Nashville etc., R. R.* v. *Alabama,* 128 U. S., 96, that State legislation "relating to the rights, duties and liabilities of citizens, and only indirectly and remotely affecting the operations of commerce is of obligatory force upon citizens within the territorial jurisdiction, whether on land or water, or engaged in commerce foreign or interstate, or in any other pursuit."

In the case of *Western Union Tel. Co.* v. *James,* 162 U. S., 650, a statute of Georgia requiring telegraph companies to transmit and deliver dispatches with impartiality, good faith and diligence under penalty of $100 in each case, in the absence of legislation by Congress on the subject, was held not to be an unwarrantable interference with interstate commerce as to messages without the State.

The exceptions are overruled, and the judgment of the Circuit Court is affirmed.