# ʼARTHUR E. DREW v. JOHN D. CARROLL.[1]

February 14, 1913.

Nos. 17,896—(179).

**Evidence admissible.**

Refusal of trial court, in action for commission on sale of land, to strike out plaintiff's testimony as to the contents of a letter alleged to have been written by him to defendant, *held*, under the circumstances, not error.

**Cross-examination on collateral matter.**

Assignment of error to action of trial court, in allowing defendant to be cross-examined as to how much he received by way of commission or profit on a sale of land which he himself had previously made, overruled.

**Parol evidence admissible.**

Action of trial court in admitting parol proof of the contents of a minor document collaterally involved in the action sustained.

Action in the district court for Anoka county to recover $2,840 commission for making a sale of land belonging to defendant. The

[1] Reported in 139 N. W. 953.

answer denied the allegations of the complaint. The case was tried before Giddings, J., and a jury which returned a verdict in favor of plaintiff for the amount demanded. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, he appealed. Affirmed.

*J. W. Buffington* and *Will A. Blanchard,* for appellant.

*H. E. Fryberger* and *Albert F. Pratt,* for respondent.

PHILIP E. BROWN, J.

At the time of the alleged occurrences involved in this action the parties thereto resided in North Dakota, on farms some three miles apart, and had known each other for some time. The court submitted to the jury the issues, made both by the pleadings and the evidence, whether, while the defendant and his wife were visiting the plaintiff, the parties entered into an oral contract to the effect that if the plaintiff would find a purchaser for the defendant's farm, or one who would make a deal with him therefor, he would pay the plaintiff a commission of one dollar an acre, and, if so, did the plaintiff perform the conditions of such contract? After the return of a verdict for the plaintiff, the defendant appealed from an order denying him a new trial. The only errors asserted relate to the admission of evidence or to the court's refusal to strike out testimony.

1. Subsequently to the introduction by the plaintiff of evidence tending to show the making of the contract and its due performance on his part, he testified, without objection, that thereafter on two occasions the defendant promised to pay him his commission, and that the plaintiff also wrote the defendant twice, and subsequently to the introduction of this testimony the following proceedings were had, relating to the letters referred to:

"Q. What did you say in those letters?

[Defendant's Counsel:] "Objected to as incompetent.

[Plaintiff's Counsel:] "Will you produce the letters, please?

[Defendant's Counsel:] "There has been no notice to produce, and I don't know that there is any such letter in existence, and I

object to it on the ground that it is incompetent, and not the best evidence. No proper notice to produce has been served.

"Q. What did you write in that letter? A. I wrote and asked him if he was ready to pay my commission. It was a very short letter, probably not more than four or five lines.

[Defendant's Counsel:] "I move to strike out the answer, and object to the question on the ground that it is incompetent and no proper foundation laid.

"The Court: Overruled."

We hold that, aside from the question of this testimony being without prejudice under the circumstances disclosed, the ruling was not erroneous. The question answered was not objected to, and it was within the discretion of the trial court to grant or deny the motion, subsequently made, to strike out the answer. Dunnell, Minn. Practice, § 1820; 3 Dunnell, Minn. Digest, § 9746.

2. The plaintiff advanced the theory, on the issue stated concerning his performance of the contract, that pursuant thereto he furnished the defendant with the names of certain probable prospective purchasers, to one of whom the defendant sold his farm. The defendant denied the making of the contract, and, while urging the improbability of the plaintiff's claims, admitted that the plaintiff gave him the names of the men referred to, claiming, however, that this was done "as one neighbor would give them to another." On the defendant's cross -examination he was interrogated as follows:

"Q. It is true, is it not, that one dollar an acre is a reasonable commission, and even two dollars an acre is reasonable commission? A. No, sir; one dollar an acre is as much as they charge for selling a farm. Q. Isn't it a fact that you sold a farm for one of your neighbors the year before, some time in 1909?

[Defendant's Counsel:] "Objected to as immaterial and not proper cross-examination.

[Plaintiff's Counsel:] "It is offered for the purpose of showing the amount of the commission.

"The Court: Overruled.

"A. Yes, sir. Q. How big a commission did you get?

[Defendant's Counsel:] "Objected to as immaterial.

"The Court: Overruled.

[Defendant's Counsel:] "Exception. .

"A. I didn't sell it on commission."

Further questions were asked of and answered by the defendant without objection, eliciting that the owner of a certain farm advised the defendant that he decided to sell it within a week, and that if the defendant would so dispose of it he could have it for a certain price, but that the land must be sold within a week. Thereafter the defendant advised the owner that he would take the farm at the price fixed, then knowing of a prospective purchaser, to whom he wrote advising him of the opportunity, and that, if he desired to buy the farm referred to, he must take it immediately, and within a few days thereafter the defendant sold the farm to his correspondent at a profit of $2,500.

The defendant argues that it was error to overrule the objections made. We hold otherwise.

The alleged objectionable testimony was material, as tending to show the unlikelihood of the defendant's insistence. In the event of the correctness of this conclusion being considered questionable, then the defendant is met with the rule that the trial court is vested with a large discretion in determining the allowable latitude of cross-examination relating to collateral matters, and that its action in such regard will not be disturbed except for clear abuse of discretion. Murphy v. Backer, 67 Minn. 510, 70 N. W. 799; 3 Dunnell, Minn. Dig. § 10,318. It is also apparent, we think, that the answers to the questions objected to were harmless; and while it is true, as a general proposition, that when an objection is made to a question and overruled, it is unnecessary for counsel further to continue to interpose objections to questions of the same character asked the same witness, in order to save his point (Carson v. Hawley, 82 Minn. 204, 84 N. W. 746; 3 Dunnell, Minn. Dig. § 9738), yet it must appear that a bona fide attempt was made to keep out the testimony challenged. Here the testimony received over the defendant's objection related to *commissions* for the sale

120 M.—31.

of land, while the testimony which he now complains of, and to the introduction of which he interposed no objection, concerned *profits* accruing from the purchase and sale of the same land.

3. The defendant's last claim is that the court erred in allowing the contents of a letter to be proved by parol testimony. The matter came up 'in the following manner: The plaintiff, in order to show efforts on his part to effect a sale of the defendant's lands, testified that, after the making of the contract with the plaintiff, he took a Mr. Best to the defendant's farm for the purpose of selling it to him, and that he so advised Mr. Best. Mr. Best, while admitting that he had some conversation with the plaintiff concerning an exchange for his lands, and also that the plaintiff drove him to the defendant's farm, where the defendant advised Best that he wanted to sell his land at a certain price, gave evidence, tending to dispute the plaintiff's testimony, to the effect that the plaintiff advised him of his desire that he should purchase the defendant's farm, and, furthermore, that at the time referred to he was not in the vicinity of the defendant's lands with the purpose of purchasing, but that his business was to exchange farms with the plaintiff. No claim was made by the plaintiff that any disposition of the defendant's farm was ever made to Mr. Best. In rebuttal, the court permitted the plaintiff's wife to testify, as against the defendant's objection, to the contents of a letter claimed to have been received by her from Mr. Best prior to the occurrences last mentioned as follows: "In that letter Mr. Best stated that he wished to get a large tract of land in North Dakota for the purpose of exchanging for something. I couldn't read the next word, I couldn't make it out. There was a word or two that I could not make out. But after a while I found it was lumber yard. So the letter stated that he wished to get hold of a large tract of land in North Dakota, for the purpose of exchanging for a lumber yard."

The defendant insists that no proper foundation was laid for the introduction of this testimony. The determination of this question, however, rested largely within the discretion of the trial court (1 Dunnell, Minn. Dig. § 3267), and we find no abuse. The following excerpt from the opinion in Wehring v. Modern Wood-

men, 107 Minn. 25, 28, 119 N. W. 245, 246, is apt on the contention stated, and also on the further question of the necessity of laying any foundation, by proof of loss of the letter or otherwise, before proving its contents orally; this letter being a minor document only collaterally involved:

"The degree of proof required to lay the foundation for secondary or parol evidence of the contents of a written instrument depends upon the circumstances of each particular case, such as the character of the instrument, its relation to the issue, and whether the original is within or without the jurisdiction of the court. Where the instrument is the foundation of the action or defense, stricter proof should be required than in a case where the existence and contents of a writing are only incidentally or collaterally involved. See 17 Cyc. 508. Now, in the case under consideration, the original writing was the notice sent out of the state to the Modern Woodmen for publication. The published notice was not the foundation of the plaintiff's action, but only a collateral fact relevant to the question of diligence in making inquiry for the whereabouts of the insured. It would seem that in such a case it would not be necessary to lay any foundation. 21 Am. & Eng. Enc. (2d ed.) 1097."

On the latter question, see also Charles v. Atlantic, 78 S. C. 36, 58 S. E. 927, 125 Am. St. 762, 17 Cyc. 469, and 2 Wigmore, Evidence, § 1291, where the reasons for dispensing with production of attesting witnesses to minor documents collaterally involved are stated in terms peculiarly applicable to the question before us.

In any event this question was one peculiarly within the discretion of the trial court, whose determination is certainly not reviewable, in the absence of abuse, which does not here appear. Says Mr. Wigmore, in commenting upon the exception of documents "collateral to the action" from the rule of profert, and after adverting to the elusiveness of the word "collateral": "There seems no alternative but to accept the current and traditional term 'collateral' as serving to define the exception. But in any case the misfortune of inconsistent precedents and the disadvantage of an obscure

definition can be obviated by applying strictly that salutary doctrine of judicial discretion. Let the trial judge determine absolutely, and without review, the application of the principle to each case. Whether a document is 'collateral' is practically a question whether it is important enough under all the circumstances to need production; and the judge presiding over the trial is fittest to determine this question finally." 2 Wigmore, Evidence, § 1253.

Order affirmed.