### STATE v. ARTHUR PEARSON.[1]

July 21, 1922.

No. 22,831.

Conviction for manslaughter sustained.
    1. There is evidence in the case sufficient to sustain a verdict of guilty of manslaughter.

[1] Reported in 189 N. W. 404.

Objections to evidence cannot be first raised on appeal—general objection not applicable to hearsay.

2. General objection to testimony as incompetent, irrelevant and immaterial does not raise the objection that it is hearsay. The rule that objections to evidence cannot be raised for the first time in this court on appeal is applicable to objections raised in this case to the reception of evidence of the county attorney as to conversation with defendant.

Defendant was indicted by the grand jury of Polk county charged with the crime of murder in the first degree, tried in the district court for that county before Watts, J., and a jury which found him guilty of manslaughter in the second degree. From an order denying his motion for a new trial, defendant appealed. Affirmed.

*F. A. Grady*, for appellant.

*Clifford L. Hilton*, Attorney General, *Albert F. Pratt*, Assistant Attorney General, and *James E. Montague*, County Attorney, for respondent.

HALLAM, J.

Defendant was convicted of manslaughter in the second degree and he appealed.

1. There is evidence as follows: On February 6, 1920, defendant and his wife were living together in a second-story room in a hotel at Crookston. They had been married but two weeks. Late in the night of February 6, plaintiff's wife there gave birth to a child. The next morning the child was found dead on the roof of a one-story annex accessible from the second-story window of the hotel. There is evidence that the child was born alive. The evidence is circumstantial as to how it came upon the roof. Defendant denied all knowledge of the affair. He denied knowledge of the birth of the child and even of the fact that his wife was pregnant. There is evidence that would justify a finding that the child was placed on the roof from the window of the bath room on the second story of the hotel near defendant's room, and evidence to sustain a verdict that both defendant and his wife were participants in the crime.

2. Complaint is now made of the reception of certain evidence. Mr. Montague, the county attorney, took the stand, and, in answer to questions asked by the assistant attorney general, testified to a conversation he had with defendant and that in that conversation he said: "I told him that she [Mrs. Pearson] told me that either at Thanksgiving time or Christmas time, I don't know which, she had told him that she was in a family way and that he had said that was not going to make any difference, that they would get married and they would keep it from her folks and that they would get rid of the child." He stated that defendant denied this incident. Had proper objection been taken at the time, this testimony would doubtless have been excluded. Its reception cannot now be objected to. The following facts furnish conclusive reason:

First, no objection was made to it in such a way as to afford the trial court a fair opportunity to rule upon it.

Second, no objection at all was raised to the reception of this testimony when the defendant made his motion for a new trial. Not until the case came to this court was its reception made a real issue.

Third, the sheriff was later called as a witness and testified to a conversation he had with defendant to substantially the same effect and this testimony was received without any objection at all.

The testimony is therefore in the case without objection and the ruling on the county attorney's testimony, if erroneous, is not ground for a reversal. State v. Crawford, 96 Minn. 95, 104 N. W. 768, 822, 1 L. R. A. (N. S.) 839.

The first proposition is the only one requiring further discussion. The record shows that Mr. Montague was asked to tell of his conversation with defendant. The only objection was "the defendant objects to any conversation * * * which Mr. Montague claims that he had with the wife of this defendant or any conversation which he claims that he was repeating from the wife to this defendant on the ground that it is privileged and as incompetent, irrelevant and immaterial." The court observed: "What he may have said to this defendant is admissible," and overruled the objection. Defendant noted an exception. No testimony of consequence was

elicited by the question objected to. Other questions which did elicit testimony now objected to were answered without any objection at all. The objection taken on the trial was clearly insufficient to advise the trial court of the ground now urged. The testimony was not privileged. If "incompetent, irrelevant and immaterial," it was because it was hearsay.

This court has very definitely decided that a party "objecting to the introduction of evidence must state his point so definitely that the court may intelligently rule upon it, and the opposing party may, if the case will admit of it, remove the objection by other evidence," and that "when an objection is so general as not to indicate the specific grounds upon which it is made, it is unavailing on appeal, unless it be of such a character that it could not have been obviated," and that the stock objection that testimony is "incompetent, irrelevant and immaterial" is not sufficient to fairly advise the court that the testimony is objected to as hearsay. Graves v. Bonness, 97 Minn. 278, 107 N. W. 163; Larson v. Anderson, 122 Minn. 39, 41, 141 N. W. 847. In Larson v. Anderson, supra, evidence was received of a letter and of a conversation "both self-serving declarations, hearsay and prejudicial," over objection that the evidence was incompetent, irrelevant and immaterial. This court held that "the objections made saved nothing for review," that no reason existed why counsel, if they deemed the evidence improper, should not have stated "the specific ground of objection instead of resorting to the elusive, and now well-nigh obsolete, formula, 'incompetent, irrelevant and immaterial' which has been in times past one of the mainstays of technical error."

The reasons for these well considered and deliberately adopted rules are not technical but substantial. The purpose is simply to require objection to evidence offered at the trial to be made at the time so clearly that the objection may be obviated or, if not, then the testimony excluded, without the cumbersome necessity of a new trial. If a new trial is now granted because of the reception of this evidence, it will mean that objection to evidence may be made for the first time in this court. The vice of this rule is apparent and far reaching. The adoption of such a rule will mean that an attor-

ney for the defendant may sit back and permit the reception of any evidence offered, assured that, if incompetent evidence gets into the case, the supreme court will set aside any adverse verdict. It will mean that, if a verdict of guilty is to stand, the court and county attorney must try the defendant's case. Any such rule is wrong in principle. Objections to testimony should be urged, if at all, when the evidence is offered on the trial. Objections which counsel do not see fit to urge should be deemed waived. Defendant's counsel is there for the purpose of making such objections, and counsel is furnished for him by the state if he has none. Defendant in this case had. as his counsel an able and experienced practitioner. He knew how to try a case and make objections on the trial. His good faith is, of course, not impugned. He made such objections as he thought the interest of his client demanded. Others should not be considered now.

Order affirmed.

HOLT and DIBELL, JJ. (dissenting).

We dissent:

What the county attorney told Pearson that Mrs. Pearson said was inadmissible. State v. Solem, 135 Minn. 200, 160 N. W. 491. This is conceded. The majority view is that error was not saved at the trial.

A reference to the record best shows what transpired. The county attorney testified that he had two conversations with Mrs. Pearson. After so stating he was asked to narrate his subsequent conversation with the defendant in the county jail. Such a conversation might be competent and material. It might involve an admission. The state knew it would not. When he had proceeded with this conversation so far as to say that he said to Pearson that "she had told me," referring to Mrs. Pearson, the following proceedings occurred:

By Mr. Grady: "I object to anything that the wife said."

By the court: "What he may have said to this defendant is admissible."

By Mr. Grady: "The defendant objects to any conversation, or alleged conversation, or purported conversation which Mr. Montague, claims that he had with the wife of this defendant, or any conversation which he claims that he was repeating from the wife to this defendant on the ground that it is privileged and as incompetent, irrelevant and immaterial."

By the Court: "The objection is overruled."

Exception.

A. "I told Mr. Pearson that Martha Pearson had told me that the child was born about eleven o'clock on Friday evening, that it was born in the bath room and that she had left the child in the bath tub; that Arthur Pearson had come home from work about twelve thirty and that after he had got home from work, both of them went into the bath room but that the body of the child was gone."

Q. "What did he say to that?"

A. "He said that was not true, that she had not taken him in the bath room, he said that he was in the bath room, that when he came home from work he went in there and washed up at this lavatory, and that there were no signs of blood in the bath room or around in that room at all when he was in there and washed up."

Q. State anything further that was said?"

A. "I told him that she told me that at either Thanksgiving or Christmas time, I don't know which, she had told him that she was in a family way and that he had said that was not going to make any difference that they would get married and they would keep it from her folks and that they would get rid of the child."

Q. "What did he say to that?

A. "He said that he had not had any such talk with her."

The witness continued his narration of his conversation with the defendant. There was no further reference of importance to a conversation with Mrs. Pearson.

The holding now is that the error, which is conceded, was not raised at the trial. If the objection had included the word "hearsay" it would have been a good one and should have resulted in the exclusion of the testimony; and still we boast a little that legal

technicalities are passing. No one can much question that the ground of objection was understood. Counsel for the state do not question its sufficiency. They say in their brief that "these conversations were clearly admissible," and that there was no testimony that "Mrs. Pearson did make these statements, for the very simple reason that it would not have been admissible." In other words the state understood that the objection reached hearsay; and since the witness did not tell the jury what Mrs. Pearson told him, which would have been hearsay and subject to the objection made, but told it what he told Pearson that Mrs. Pearson told him, the hearsay objection did not apply, the testimony was material, and being so was not successfully assailed by the objection to it as immaterial. It is this court alone which insists, in order to preserve the conviction, that defendant's counsel did not sufficiently state the point of his objection. It may not be entirely clear that an objection to the materiality was not sufficient. The testimony was not material unless it provoked an unfavorable admission, and it did not. The state knew that it would not for it knew what its witness would say. The witness did not tell the jury what Mrs. Pearson said. The state did not ask him to do so. He was asked to state and did state what he told Pearson that Mrs. Pearson said. If material it might seem that his testimony should be admitted for the fact to which it was directed could be proved in no other way. Hearsay evidence implies the existence of original evidence. But let it be assumed that an objection upon the ground of incompetency, irrelevancy and immateriality was not sufficient and that it was necessary to particularize. The objection "to anything that the wife said," made immediately upon the appearance of testimony of that character, and, after the remark of the court; followed by an objection "to any conversation or alleged conversation or purported conversation" which the witness claimed to have with the wife, and to "any conversation which he claims that he was repeating from the wife to this defendant," adding that it was privileged, incompetent, irrelevant and immaterial, should be enough to satisfy the most technical demands of the law. Of course, even if the facts were as

suggested by the witness, Mrs. Pearson could not have given them in evidence over objection. G. S. 1913, § 8375.

The cases of Graves v. Bonness, 97 Minn. 278, 107 N. W. 163, and Larson v. Anderson, 122 Minn. 39, 141 N. W. 847, are far away from this case. Nor was it necessary that counsel repeat his objection. His objection was to the conversation. He was not required to renew it, after having once made his objection clear and taken a ruling, when the witness was told to continue his narration. Carson v. Hawley, 82 Minn. 204, 84 N. W. 746; Malone v. Stephenson, 94 Minn. 222, 102 N. W. 372. There must of course be a bona fide attempt to exclude the erroneous testimony. Drew v. Carroll, 120 Minn. 478, 139 N. W. 953. The objection reached both of the questions quoted and it was enough that it reached one. Counsel might wisely prefer not to antagonize the jury by repeating his objection and thereby emphasize the prejudicial effect of the testimony which the court had held proper. Malone v. Stephenson, 94 Minn. 222, 102 N. W. 372; Carson v. Hawley, 82 Minn. 204, 84 N. W. 746.

We do not understand that it is urged that counsel for the defendant allowed the reception of erroneous evidence, without objection, assured that an adverse verdict would be set aside by this court because of it, or that he is at all criticized. If criticism is to be indulged it should be against the state in offering to put the erroneous testimony before the jury.

The suggested evidence of the wife, carried to the jury in the way stated, was damaging. A jury does not escape its effect. The jury was not told to avoid it. It understood that it was proper when told that it was and when the defendant's objection was overruled. A reviewing court, this court, knowing that the evidence was erroneous, is affected by it in considering the merits. The human mind must be made over before it can be otherwise.

From nothing that is said should it be inferred that the attitude of the trial court was unfair or unfriendly to the defendant. His counsel makes no complaint of the general conduct of the trial or of the charge.

The state chooses to take a conviction of the defendant by the use of evidence such as is not permitted in common law countries.

The court is content to let it do so. The defendant may be guilty. The state in taking a finding of guilt has not accorded him the law's usual protection.

We concur in the opinion of the majority that the evidence though circumstantial sustains the verdict.