STATE v. ROBERT KORTNESS.

170 N. W. (2d) 210.

August 8, 1969—No. 41098.

*C. Paul Jones,* State Public Defender, and *Robert E. Oliphant,* Assistant State Public Defender, for appellant.

*Douglas M. Head,* Attorney General, *Richard H. Kyle,* Solicitor General, and *Alfred C. Schmidt,* Ninth District Prosecutor, for respondent.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Frank T. Gallagher, JJ.

PER CURIAM.

Defendant appeals from a judgment of conviction on a charge of rape, Minn. St. 1965, § 617.01 (3). He asserts numerous errors, including denial of a fair trial because of prejudicial evidence of prior offenses and the failure of the court to grant a mistrial on its own initiative. He also claims that the record establishes consent to the act with which he is charged.

It appears from the record that defendant, Robert Kortness, is the divorced husband of the complainant, Mary Ann Kortness. They had been divorced for about 5 years, and the wife lives with their minor son, Steven. On the evening of March 6, 1967, at about 8 p. m., defendant called his former wife and had a general conversation with her. Later in the evening, between 11 and 12 o'clock, he called again and said that he wanted to pay her some money which he owed. His conversation indicated to her that he had been drinking, and she told him not to come but to leave the money with his grandmother, who would give it to her. He told her that he was calling from a tavern and that Ben Stahl, the tavern keeper, would provide transportation for him to her home. He instructed her to prepare coffee. Mrs. Kortness then called a friend and coworker, Mary Jane Brower, and said that if she did not arrive at work on time the next morning Miss Brower should send someone to look for her. The testimony that Mrs. Kortness was in fear of defendant was corroborated by Miss Brower. Some time later, after Mrs. Kortness had retired, defendant entered her home. She went into the living room and found him standing inside the front door; Stahl was with him. There followed a discussion consisting mostly of threats, arguments, and protestations. Defendant was drinking coffee and whiskey. He told her that he intended to stay all night and used abusive language. She asked him to leave on several occasions and told him that if he stayed she would go. She asked Stahl to take him away. Defendant became angry, threw his sandwich against the TV, and told her she would be sorry if she left. While the tavern keeper attempted to calm defendant and persuade him to leave, Mrs. Kortness went to the bedroom where she kept a can of tear gas for protection. When she returned to the living room and defendant continued his aggressive conduct, she approached defendant, called his name, and sprayed him with the gas. He struck her across the face and she fell to the floor. When she got up, he knocked her down and kicked her. The tavern keeper testified that he restrained defendant after he had kicked her twice. Mrs. Kortness testified that he threatened to knock her eyes and teeth out if she ever attempted that again. The tavern keeper re-

membered hearing something to this effect. At this point Stahl left the premises and said that he would warm up the car and wait for defendant. Mrs. Kortness tried to follow him, but defendant prevented her from leaving and struck her again. After waiting for a period of about 15 minutes, the tavern keeper left.

Thereafter, defendant struck Mrs. Kortness again, knocking her onto a bed in the bedroom adjoining the living room. He held her down on the bed and attempted to spray her with the tear gas, but the can was empty. He returned to the living room and told her to wash his eyes and a cut on his finger. She came into the living room and he struck her again. He then washed his eyes and finger himself and they sat together in the living room. She was in fear and told him that she was sorry for spraying him with the tear gas. They talked about a reconciliation and, out of fear, she agreed with everything he said. Thereafter, he followed her to the bedroom where he forced her to commit the act with which he was charged. When she was free to do so, she left the bedroom, dressed her son, and went to a friend's home about a block away. She told the child, "If Bob [the defendant] catches Mama, don't stop, don't look back, keep running." From the friend's home, she called a coworker and then the sheriff, who went to her home and arrested the defendant. The sheriff testified that she was distraught, disheveled, and evidently disturbed when he saw her that morning.

It should be noted that Mrs. Kortness is a small woman crippled by polio, which has affected her legs and back, as a result of which it is difficult for her to use stairs or to run. She was 28 years of age at the time of trial and was employed as a medical technician at the local clinic. Defendant is a strong man weighing 245 pounds, and he becomes belligerent when drinking. He had in the past assaulted her and threatened to kill her if she called the police, and on many occasions he had attempted to enter her home without permission. At the time of trial he was 27 years of age and had an irregular work record as a manual laborer.

The public defender's brief contains an interesting discussion of various authorities in support of the assignments of error. In the context of the record, however, this brief can be considered to have no more than academic interest. Only a brief reference to defendant's claims is justified. When defendant took the stand in his own defense he was asked a series of questions by the prosecutor, authorized by Minn. St. 595.07,[1] which established that defendant had previously been

---

[1] Minn. St. 595.07 provides: "Every person convicted of crime shall be a competent witness in any civil or criminal proceeding, but his

convicted of assaulting his wife, passing worthless checks, criminal damage to property, disorderly conduct, assault, and criminal trespass. Defendant claims that the admission of such evidence under the pretext of impeaching his credibility was a denial of his constitutional right to a fair trial.

Defendant also contends that the trial court should have, on its own initiative, declared a mistrial when Mrs. Kortness testified that he had told her, during the course of the night, that he had burglarized a creamery but the jury had let him off. In addition, it is contended that the trial court's instructions bearing on consent were deficient.

These claims may be briefly disposed of by noting that defendant does not claim that he was surprised by the evidence presented by the prosecution. Whatever requirements of notice which might have been necessary under our decision of State v. Spreigl, 272 Minn. 488, 139 N. W. (2d) 167, were complied with. Defendant does not claim that he was denied adequate representation by competent counsel, and no objection was made to the evidence presented. We may assume from the record that defendant either recognized the admissibility of the evidence or, for tactical reasons, chose not to object. A defendant should not be permitted to court error in order to preserve a basis for appeal and thus force the state into the "cumbersome necessity of a new trial." State v. Pearson, 153 Minn. 32, 35, 189 N. W. 404, 405. It is our view that the evidence of prior assault upon the victim by the defendant was clearly relevant to the issue and therefore admissible.

A review of the entire record satisfies us that, at the time of the offense, Mrs. Kortness was in fear and had reasonable cause to believe that immediate and great bodily harm would be inflicted upon her if she resisted. Moreover, the evidence would satisfy the jury that she did in fact resist to the limit of her endurance. We think the conviction is amply justified by the evidence. State v. Norgaard, 272 Minn. 48, 136 N. W. (2d) 628; State v. Collins, 276 Minn. 459, 150 N. W. (2d) 850, certiorari denied, 390 U. S. 960, 88 S. Ct. 1058, 19 L. ed. (2d) 1156.

If there are circumstances which might warrant some relief for defendant, he should seek it from the Adult Corrections Commission, the proper agency to deal with him.

Affirmed.

---

conviction may be proved for the purpose of affecting the weight of his testimony, either by the record or by his cross-examination, upon which he shall answer any proper question relevant to that inquiry; and the party cross-examining shall not be concluded by his answer thereto."