*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0804**

State of Minnesota,
Respondent,

vs.

Patrick James Buswell,
Appellant.

**Filed April 18, 2016
Affirmed
Bjorkman, Judge**

Anoka County District Court
File No. 02-CR-14-5675

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Anthony C. Palumbo, Anoka County Attorney, Jon C. Audette, Assistant County Attorney, Anoka, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Steven P. Russett, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Bjorkman, Presiding Judge; Halbrooks, Judge; and

Smith, John, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**UNPUBLISHED OPINION**

**BJORKMAN**, Judge

Appellant challenges his convictions of being a prohibited person in possession of a firearm and possession of drug paraphernalia, arguing that (1) the evidence is insufficient to prove he was prohibited from possessing a firearm and that he "knowingly" possessed a firearm, (2) the state committed a *Brady* violation, and (3) the prosecutor committed misconduct. We affirm.

**FACTS**

On September 2, 2014, Minnesota State Trooper Robert Rawson was on patrol in Mounds View. Dispatch relayed a report of a black Ford F150 driving erratically in the area. Trooper Rawson located the vehicle and activated his emergency lights to initiate a stop. The vehicle sped away. Trooper Rawson engaged in a high-speed pursuit, traveling at speeds between 80 and 100 miles per hour in a 35-mile-per-hour zone. He was forced to abandon the chase after a tire came off of his squad car. Dispatch continued to monitor the vehicle's path using freeway cameras.

Trooper James Wellnitz soon located the vehicle, which continued to flee at high speeds. When Trooper Wellnitz lost sight of the fleeing vehicle, two Blaine squad cars took up the chase. The officers abandoned their pursuit after the vehicle went off road. A few minutes later, dispatch indicated that the vehicle had been found abandoned in the parking lot of a restaurant in Blaine. A restaurant employee told police officers that he saw a man wearing a baseball cap exit the vehicle and walk northbound.

Blaine Police Officer Reginald Larson and his canine partner, Rex, arrived on the scene and tracked the suspect. Rex led the officers to a neighborhood where residents reported a man had just run through their yard. Rex continued to track the suspect until he reached a 10- to 12-foot-high wall. Appellant Patrick James Buswell was hiding in a dumpster on the other side of the wall. Buswell had $2,692 in cash and a .22 caliber bullet on his person. Inside the abandoned vehicle, officers discovered several items consistent with narcotics use and trafficking, including butane torches, glass pipes, plastic bags, and a scale. Officers also discovered a pellet gun, a .44 magnum revolver, and additional .22 caliber bullets.

Respondent State of Minnesota charged Buswell with prohibited possession of a firearm, fleeing a peace officer in a motor vehicle, and possession of drug paraphernalia. Prior to his jury trial, Buswell stipulated to the fact that he was ineligible to possess a firearm based on a prior conviction for a crime of violence. The jury found Buswell guilty on all counts. The district court sentenced Buswell to 60 months in prison for the firearm offense and 17 months for fleeing a peace officer in a motor vehicle. Buswell appeals.

## D E C I S I O N

### I. Sufficient evidence supports Buswell's prohibited-possession-of-a-firearm conviction.

In reviewing a sufficiency-of-the-evidence challenge, we review the record "to determine whether the evidence, when viewed in a light most favorable to the conviction, was sufficient to permit the jurors to reach the verdict which they did." *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). We assume "that the jury believed all of the state's

3

witnesses and disbelieved any evidence to the contrary." *State v. Chambers*, 589 N.W.2d 466, 477 (Minn. 1999). "We will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was proven guilty of the offense charged." *State v. Nelson*, 812 N.W.2d 184, 187 (Minn. App. 2012) (quotations omitted).

When a conviction is based on circumstantial evidence, we use a two-step process. *State v. Silvernail*, 831 N.W.2d 594, 598 (Minn. 2013). First, we identify the circumstances proved, assuming that the jury resolved any factual disputes in a manner that is consistent with the jury's verdict. *Id.* at 598-99. Second, we independently examine the reasonableness of the inferences the jury could draw from those circumstances. *Id.* at 599. All circumstances proved must be consistent with guilt and inconsistent with any rational hypothesis except that of guilt. *State v. Andersen*, 784 N.W.2d 320, 329 (Minn. 2010).

A.   **The invited-error doctrine bars Buswell's argument that the state did not prove he has a disqualifying conviction.**

Buswell stipulated that he was prohibited from possessing a firearm because he had a prior conviction for a crime of violence. Specifically, he admitted that he has a Wisconsin conviction for manufacturing or delivering more than 200 but less than 1,000 grams of THC, and that the crime would be a felony if he had committed it in Minnesota. But he now argues that the stipulation is insufficient to sustain his conviction because his Wisconsin offense is not a crime of violence as defined by the statute under which he was

4

charged. The state argues that the invited-error doctrine bars this argument. We agree with the state.

The invited-error doctrine provides that "a party cannot assert on appeal an error that he invited or that he could have prevented at the district court." *State v. Benton*, 858 N.W.2d 535, 540 (Minn. 2015) (quotation omitted). It is based on the principle that a "defendant should not be permitted to court error in order to preserve a basis for appeal and thus force the state into the cumbersome necessity of a new trial." *State v. Kortness*, 284 Minn. 555, 558, 170 N.W.2d 210, 213 (1969) (quotation omitted). But the invited-error doctrine does not apply to plain error that affects the defendant's substantial rights and implicates the fairness and integrity of the judicial proceedings. *State v. Carradine*, 812 N.W.2d 130, 142 (Minn. 2012).

Two Minnesota statutes prohibit possession of a firearm by an individual with a prior violent-crime conviction. The state charged Buswell under Minn. Stat. § 609.165, subd. 1b(a) (2014), which defines the disqualifying crimes of violence with reference to Minnesota statutes. Buswell stipulated that he was prohibited from possessing a firearm because his Wisconsin drug conviction would have been a felony-level offense had he committed it in Minnesota. Although the drug conviction plainly prohibits him from possessing a firearm, the prohibition flows from the second Minnesota statute, Minn. Stat. § 624.713, subd. 1(2) (2014), which expands the definition of disqualifying offenses to include crimes committed in other states that would constitute crimes of violence under Minnesota law. Despite the state's clear charging error, we are persuaded that the state reasonably relied on Buswell's stipulation. Had Buswell moved to dismiss the charge

rather than stipulate to the disqualifying conviction, the state could have amended the complaint to remedy the defect. *See* Minn. R. Crim. P. 17.06, subd. 4(3).[1] Because we discern no need to address Buswell's argument to protect the fairness and integrity of the judicial proceedings, we conclude that the invited-error doctrine bars Buswell's argument.

**B.    The evidence was sufficient to prove that Buswell knowingly possessed the firearms.**

Buswell next argues that the evidence was insufficient because it does not eliminate the reasonable hypothesis that he was unaware that the firearms were in his vehicle. We disagree.

The relevant circumstances proved are as follows. In response to Trooper Rawson's effort to initiate a traffic stop, Buswell led officers on a high-speed chase through multiple towns before abandoning his vehicle and fleeing on foot. Neither the pursuing officers nor the restaurant employee who saw Buswell exit the vehicle observed anyone other than the driver in the vehicle. When Buswell was discovered hiding in a dumpster, he possessed a .22 caliber bullet. The police found additional .22 caliber bullets in Buswell's abandoned vehicle, along with two firearms. One of the firearms was sticking out from underneath

---

[1] Buswell stipulated that he has a prior Wisconsin conviction for manufacturing or delivering more than 200 but less than 1000 grams of THC. Under Minnesota law, an individual is guilty of felony fifth-degree controlled-substance crime when he sells one or more mixtures containing marijuana or THC in an amount greater than 42.5 grams. Minn. Stat. § 152.025, subd. 1(a)(1) (2014); *see also* Minn. Stat. § 152.01, subds. 15a(1) (defining "sell" to mean "deliver" or "manufacture"), 16 (defining "small amount" of marijuana as 42.5 grams or less) (2014). Minn. Stat. § 624.712, subd. 5 (2014) defines "crime of violence" to include all felony convictions of controlled-substance crimes under chapter 152. Because Buswell's Wisconsin controlled-substance offense plainly would have been a crime of violence had it been committed in Minnesota, the conviction prohibits him from possessing a firearm.

6

the passenger seat and the other was discovered "right next to it a little further underneath the seat."

Given the circumstances proved, it is not rational to conclude that Buswell was unaware of the firearms in the vehicle. One of the firearms was clearly visible to Buswell from the driver's seat, and the other was discovered right next to it under the front seat. The fact that Buswell was found with a .22 caliber bullet on his person and additional .22 caliber bullets were found in the vehicle demonstrates that Buswell was aware of the ammunition in the vehicle. Buswell was the only occupant of the vehicle. Moreover, Buswell's acts of leading police on a high-speed chase, abandoning his vehicle, and hiding in a dumpster demonstrate his awareness of guilt. *See State v. Bias*, 419 N.W.2d 480, 485 (Minn. 1988) ("[E]vidence of flight suggests consciousness of guilt."). Finally, it is not reasonable to conclude that Buswell fled because he knew the drug paraphernalia was in the vehicle, but was not aware of the firearms. Possession of drug paraphernalia is a petty misdemeanor; possession of a firearm by a prohibited person is a felony. Minn. Stat. §§ 152.092, 609.165, subd. 1b(a) (2014). Fleeing the officers in his vehicle alone is more serious than possessing drug paraphernalia. *See* Minn. Stat. § 609.487, subd. 3 (2014) (stating that fleeing a peace officer in a motor vehicle is a felony). On this record, we conclude the evidence was sufficient to prove that Buswell knowingly possessed the firearms discovered in his vehicle.

## II.    Buswell is not entitled to a new trial based on a *Brady* violation.

The state is required to disclose material exculpatory evidence to a defendant under *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-97 (1963). To obtain a new trial

due to a *Brady* violation, a defendant must establish that the evidence was (1) favorable to him as exculpatory or impeaching; (2) suppressed by the prosecution, intentionally or otherwise; and (3) material, resulting in prejudice to the defendant. *Walen v. State*, 777 N.W.2d 213, 216 (Minn. 2010). The suppression of evidence is prejudicial if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* (quotation omitted). Put another way, a conviction must be reversed "only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." *United States v. Bagley*, 473 U.S. 667, 678, 105 S. Ct. 3375, 3381 (1985). We review the question of materiality de novo. *Pederson v. State*, 692 N.W.2d 452, 460 (Minn. 2005).

On the second day of trial, the prosecutor informed the district court that one of the officers just advised him that a resident of the neighborhood through which the officers tracked Buswell later reported that the person she had seen fleeing had returned. Buswell moved for a mistrial based on the late disclosure, which the district court denied. Buswell argues that he is entitled to a new trial because the undisclosed evidence suggests that either he was not the person who ran from the police on the day in question, or an additional person was involved. He contends that the former possibility negates the claim that Buswell was the driver, and the latter suggest that another person could have possessed the items found in the vehicle. We are not persuaded.

Even if the state violated its *Brady* obligation—which we do not find—Buswell has not met his burden of showing the alleged violation undermines confidence in the outcome of the trial. Officer Rawson, who actively pursued the vehicle before it was abandoned,

8

positively identified Buswell as both the driver of the vehicle and the individual removed from the dumpster. Three officers involved in the pursuit testified that they did not see anyone in the vehicle other than the driver. The restaurant employee testified that he saw only one person exit the vehicle. None of the residents reported seeing more than one individual running through the neighborhood. Finally, the canine officer tracked Buswell's scent from the vehicle, through the neighborhood, and to the wall behind which Buswell was hiding in a dumpster. In sum, the evidence that there was only one person in the vehicle, and that Buswell was that person, is strong. Accordingly, we conclude that there is not a reasonable probability that the verdict would have been different if the fact that one resident reported that the suspect had returned to the neighborhood had been disclosed to defense.

## III. The prosecutor did not commit prejudicial misconduct.

Buswell challenges several statements made by the prosecutor during his opening and closing arguments. He concedes that his trial counsel did not object to the statements, and therefore a modified plain-error test applies. That test requires us to consider whether there is "(1) error, (2) that is plain, and (3) affects substantial rights." *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006). The state bears the burden of proving the third element that "there is no reasonable likelihood that the absence of the misconduct in question would have had a significant effect on the verdict." *Id.* (quotation omitted).

Buswell first argues that the prosecutor committed prejudicial misconduct during his opening statement by referring to Buswell's active arrest warrant. We are not persuaded. The prosecutor obtained a pretrial ruling that evidence of the active arrest

9

warrant could be admitted for the limited purpose of establishing a possible motive for fleeing the police. His opening remark that "[Buswell] is running from a warrant for his arrest," was consistent with the limited purpose for which the prosecutor was permitted to introduce the evidence. While evidence of the active arrest warrant was never actually introduced at trial, we discern no prejudice occasioned by the prosecutor's brief reference to it during his opening statement. *See State v. Nissalke*, 801 N.W.2d 82, 104 (Minn. 2011) ("[I]t is not prejudicial error when a prosecutor discusses expected testimony in his opening statement but does not produce the evidence at trial.").

Buswell next asserts that the prosecutor committed prejudicial misconduct by again referring to Buswell's active arrest warrant during his closing argument. The state concedes that the reference was plain error, but argues that it did not affect Buswell's substantial rights because the case against him was strong and the reference to the warrant was extremely brief. We agree. The statement, "As you heard, Patrick Buswell has a warrant for his arrest," is just one line in a 16-page closing statement. And the existence of a warrant was not the only motive the prosecutor established for Buswell's flight. The prosecutor also argued that Buswell fled because he knew he had items consistent with narcotics use and trafficking, and firearms, which he was prohibited from possessing, in his car. Because the evidence against Buswell was strong, the prosecutor's brief reference to the active arrest warrant during his closing argument did not affect Buswell's substantial rights. *See id.* (stating that the de minimis nature of the reference to facts not in evidence and the strength of the state's case indicated there was no reasonable likelihood the improper reference impacted the verdict).

Finally, Buswell argues that the prosecutor committed misconduct by arguing in closing, without evidentiary support, that .22 caliber bullets were discovered "next to the meth pipes, next to the plastic baggies, next to the digital scale" and "next to" the firearms. We are not persuaded. The state elicited testimony that .22 caliber bullets were found scattered throughout the vehicle, and the bullets were admitted as exhibits. On this record, we conclude that it was not improper for the prosecutor to suggest that the ammunition was found in close proximity to the prohibited items. *See State v. Wahlberg*, 296 N.W.2d 408, 419-20 (Minn. 1980) (holding that a prosecutor has "the right to present to the jury all legitimate arguments on the evidence, to analyze and explain the evidence, and to present all proper inferences to be drawn therefrom.").

In sum, the prosecutor did not commit prejudicial misconduct and Buswell is not entitled to a new trial on this basis.

**Affirmed.**