## HENRY B. LOWDEN
### v.
## IDA E. MORRISON.

36  495
e105  ²254

*Contract of Marriage—Breach—Evidence—Instructions.*

1. In an action for breach of contract of marriage, this court holds that a verdict for plaintiff was proper.

2. Evidence of seduction in such action is admissible, though the seduction is not charged in the declaration.

3. In such action an instruction that the unsupported testimony of plaintiff, with a positive contradiction from defendant, will not sustain a contract of marriage, usurps the functions of the jury, and is properly refused.

4. An instruction that the jury are to consider all the evidence before them is unnecessary, and its refusal is not error.

[Opinion filed May 28, 1890.]

IN ERROR to the Circuit Court of Marshall County; the Hon. T. M. SHAW, Judge, presiding.

Mr. FRED. S. POTTER, for plaintiff in error.

Messrs. BARNES & BARNES, for defendant in error.

C. B. SMITH, J. This was an action brought by Ida E. Morrison against Henry B. Lowden to recover damages for an alleged breach of a marriage contract. The declaration contained two counts. The first count declared upon a contract and promise on the part of appellant to marry appellee upon request, and that upon such request he failed and refused to do so, and the second count upon a promise to marry appellee within a reasonable time, and a breach also of that promise. The defendant pleaded the general issue. On a trial before a jury the plaintiff obtained a verdict for $2,500, upon which the court, after overruling a motion for a new trial, gave judgment, to which the defendant excepted, and he now sues out this writ of error, brings the record before us, and assigns the usual errors and asks for a reversal of the judgment.

The errors, however, relied upon, and pressed upon our attention are—

First, that the verdict is contrary to the evidence.

Second, that the court erred in allowing proof of seduction to go to the jury.

Third, that the court erred in instructing the jury.

The proof in the case is brief. Ida E. Morrison, appellee, testified that she was a single woman and had never been married, and that she was twenty years old, and that she became acquainted with appellant at his mother's house in July, 1887, where she was then engaged at work, and where she continued to work until the 14th of October following. There were but three persons in the family, appellant, his mother and appellee. When appellee had been there at work about three weeks, she says appellant commenced being familiar with her, and pinched her cheeks, and talked love to her, and told her love stories, and told her that she was pretty and that he loved her, and asked her in return if she loved him, to which she replied she did. This courtship was conducted largely by appellant of evenings, when his mother was

at prayer meeting and absent from home, and while he was at home alone with appellee. In due course of time appellant proposed marriage to appellee, and she swears she accepted his offer and agreed to marry him, and that it was agreed that they should be married some time that fall ensuing, or during the absence of the mother in California, a trip which she then contemplated making that fall. Appellee swears the contract or agreement of marriage was made between them in the second week of August, 1887. She testifies that afterward, on the night of the 28th of August, appellant came to her room and solicited her to submit to his embraces, and said to her that they were already engaged to be married and that it would not make any difference if he did seduce her before they were married. Appellee testifies that, relying upon his promises to marry her, she then submitted her person to him, and that but for such promise she would not have done so. Frequent acts of sexual intercourse followed at appellant's house, under the guise and pretense that it would be followed by marriage in the fall. From these acts of sexual intercourse appellee became pregnant, and on the 21st of June, 1888, was delivered of a child which she testified was begotten by appellant. He was afterward prosecuted in bastardy proceedings for the support of this child.

Appellee testifies that she frequently requested appellant to marry her, and informed him of her condition and reminded him of his promises and of his deceitful conduct and treatment of her, but that he refused to marry her or in any wise assist her in her trouble and misfortune.

E. J. Riely, an attorney and master in chancery of the Circuit Court, testified to a conversation between appellant and appellee in the justice's office when appellant was arrested and brought in on the bastardy warrant.

When appellant was brought before the justice, and in the presence of the justice, witness Riely and appellee, he, appellant, asked, " What was going to be done," and appellee replied "that she wanted him to marry her; but he said, "No, I wouldn't do that," and she replied," I would like to know the reason why you promised to, and I would like to know why

you won't do it; you promised to, didn't you?" to which he replied, " Yes, I promised to, but I won't."

This was the substance of the testimony for the plaintiff.

The defendant testified on his own behalf and denied that he ever had any courtship with appellee and denied that he ever made any promise of marriage to her, at any time or place, and denied making the admission in the justice's office which was sworn to by Riely, that he did promise to marry her. When he was asked if he had ever had any intimacy with her of any sort he replied, " Not that I remember of, no sir; " and when again asked if he would deny that he had ever had sexual intercourse with appellee he again answered, "Not that I remember of." Taking into consideration the subject of inquiry and the nature and indefinite character of appellant's last two answers it is not strange that the jury should not have placed much reliance upon a witness whose memory played him such fantastic tricks. There were two or three lady witnesses who testified to certain conversations with appellee wherein she said she was going to make a mash on appellant, that he was worth $20,000, and another witness swears that appellee told her the first time she ever met her that the only way she could get appellant to marry her was to allow him to seduce her first; that she wanted him to marry her, and did not know any other way to get him. The cross-examination shows that the testimony of these last named witnesses was entitled to very little credit.

We think upon the whole evidence the jury were well justified in finding the issue for the plaintiff both upon the question of the alleged promise to marry as well as upon the charge of seduction resulting from and as a consequence of such promises. The jury saw and heard all the witnesses and had ample opportunity to know who was testifying truthfully and who falsely, and we can not say that they erred in the estimate they placed upon the capacity and willingness of the various witnesses for telling the truth.

It is again urged that the court erred in permitting proof of seduction without an allegation of the fact in the declaration. In this there was no error. The seduction was not relied

on as a cause of action, but simply as evidence of the wrongful act of defendant resulting from the promise and the breach. It is not necessary to plead that which is merely evidence. Tubbs v. Van Kleek, 12 Ill. 446; Barnet v. Simpkins, 24 Ill. 265; Fidler v. McKinley, 21 Ill. 308.

It is also objected that the court erred in giving instructions for appellee, and in refusing to give the second, third and fourth refused instructions for appellant. We have carefully examined all these instructions given, and are satisfied they correctly declared the law to the jury, and that there was no error in giving them, nor was there any error in refusing appellant's fourth instruction. It amounted to nothing more than telling the jury to consider all the evidence before them. The jury certainly understood that to be their duty without being so informed by the court. The instruction contained no proposition of law upon which the jury needed instruction. The second refused instruction was not different in substance from the fourth. The third refused instruction is an attempt to get the court to usurp the functions of the jury and to declare, as a matter of law, that the unsupported testimony of the plaintiff, taken by itself, will not sustain a contract of marriage, with a positive contradiction from the defendant, if the witnesses are equally credible That was a question for the jury and not for the court. The instruction was improper for the further reason that appellee was supported, and her testimony did not stand alone. Some other objections are urged against the ruling of the court in the admissibility and rejection of evidence. It would serve no useful purpose to discuss each of the questions in detail.

We have carefully examined all these objections and are satisfied the court ruled correctly during the progress of the trial, and we have been unable to find any substantial error among the numerous assignments on this record, and the judgment will be affirmed.

*Judgment affirmed.*