## EUGENIA H. HAUGEN v. OSCAR J. SWANSON.[1]

December 29, 1944.

No. 33,800.

*Walter P. Wolfe,* for appellant.
*Arthur E. Giddings,* for respondent.

STREISSGUTH, JUSTICE.

This action was commenced in 1943 for the purpose of having defendant adjudged the father of Georgia Maude Swanson, a child born to the plaintiff on January 12, 1932, and to compel him to contribute to the future support and maintenance of said child and to reimburse plaintiff for moneys theretofore expended by her in its support and maintenance.

[1] Reported in 16 N. W. (2d) 900.

The parties were married in 1919 and were divorced on May 12, 1931. The divorce action was commenced in February 1930, but, notwithstanding its pendency, the parties continued to live together. At that time they were living on what was known as the Libby farm in Anoka county. The Libby farm dwelling was a small five-room house with only two bedrooms, one usually occupied by the defendant, the other by plaintiff and her younger son, while the older son usually slept on a couch in the dining room.

About March 1, 1931, plaintiff prepared to leave defendant, and in doing so moved some of her belongings from the farm. According to defendant's testimony, "she was gone for about two weeks or two or three weeks, and she came back again and stayed for, well, within, about, around the first of April." On April 1, defendant moved to another farm known as the Barrett farm, where he lived alone. He admits that on one occasion, about the middle of April, his wife and her son Harold, by a former marriage, then about 15 years of age, came to the Barrett farm and stayed overnight.

Plaintiff's testimony was to the effect that while she lived with defendant on the Libby farm he was having regular sexual relations with her "nearly every night." She also testified that she spent two nights with him (April 14 and 15, 1931) on the Barrett farm, during each of which defendant had sexual relations with her. The defendant positively denied such testimony on the part of his former wife, and stated that he had not had any sexual relations with her for several years prior to the divorce. He denied being the father of the child and offered considerable proof that his wife was going out with other men. In some instances during 1930 and the forepart of 1931, he testified, she was gone for several days, while she admitted that she had made four trips to Chicago in 1931 unaccompanied by him. There was no positive proof, however, that she had ever had sexual relations with any of her alleged paramours or that she was caught occupying the same bedroom with any of them.

Seven witnesses were called by defendant, three of them members of the jury panel and one of them a court bailiff, to testify that the reputation of plaintiff for truth and veracity was bad and that they would not believe her under oath.

The court submitted one question to the jury, to wit: "Is the defendant, Oscar J. Swanson, the father of the child born to Eugenia H. Swanson on January 12, 1932?" It charged the jury on burden of proof and presumptions as follows:

"The burden of proof is upon the plaintiff to establish that the defendant is the father of this child, and plaintiff must establish this by a fair preponderance of the evidence. In establishing her case the plaintiff has the benefit of the presumption of legitimacy of any child conceived in wedlock. This presumption must be rebutted by the defendant. Access, that is, an opportunity of sexual intercourse, need not be shown to have been impossible. In other words, the defendant, to rebut this presumption, does not have to show that it was impossible for him to have access to the plaintiff and to have sexual intercourse. Where an opportunity for sexual intercourse is shown, the presumption favoring legitimacy, while very strong, is not conclusive and may be rebutted by showing that intercourse did not, in fact, take place."

The jury answered in the negative the question submitted to it, and plaintiff appeals from an order denying her motion for a new trial.

In State v. Soyka, 181 Minn. 533, 534, 233 N. W. 300, 301, upon which the trial court relied, a married woman conceived a child while she and her husband were separated and living apart, and both husband and wife testified to nonaccess during the entire period of their separation. We upheld a verdict adjudging the wife's paramour to be the father of the child born to her and approved, as applied to the facts of that case, the rule stated in 3 R. C. L. 728—

"that access, that is an opportunity for sexual intercourse, need not be shown to have been impossible, and that where an opportunity for sexual intercourse is shown, the presumption favoring

legitimacy, while very strong, is not conclusive, and may be rebutted by showing that intercourse did not in fact take place."

The facts in that case are clearly distinguishable from those in the instant case. There, the husband and wife were living separate and apart during the entire possible period of gestation, which—according to medical authorities approved by this court—usually is a period of from 260 to 300 days prior to the birth of the child. See, State v. Domish, 154 Minn. 512, 191 N. W. 1002. Though they occasionally saw each other, there was no evidence that they had ever occupied the same house at any time during such period. Both testified positively to nonaccess during such period.

The rule of the Soyka case should not be extended to a situation such as the record here discloses. The child whose legitimacy is questioned was born on January 12, 1932. Counting back 300 and 260 days, respectively, from the date of birth, fixes the date of conception somewhere between the 18th day of March·and the 28th day of April 1931. Defendant and plaintiff, his then wife, lived together in their farm home at least two or three weeks during the latter part of March, according to defendant's own admission, and the parties, according to his further admission, spent one night in the same house on the Barrett farm about the middle of April, on which occasion the only other occupant of the house was plaintiff's 15-year-old son.

While defendant testified positively that no sexual intercourse occurred during the night in April and further denied having had any sexual relations with his wife for more than two years, yet there obviously were numerous nights during the period in which conception must have taken place when the parties were the sole adult occupants of defendant's home. The fact that the parties while still husband and wife occupied the same dwelling house in March and April being admitted, the other circumstances proved were not such as to afford any clear and satisfactory proof—sufficient to overcome the "strong" presumption to the contrary—that there was no sexual relationship between the parties during the

period in which conception took place. The admissions by defendant, combined with the strong presumption of legitimacy, require that any verdict labeling the wife's daughter as illegitimate be set aside.

Conceivably, there may arise cases where all possibility, or at least all reasonable probability, of the husband's parenthood of his wife's child will be excluded by proof of miscegenation, or of his impotency, or of the negative results of reliable blood tests by impartial physicians. But, absent proof of such character, the rule of State v. Soyka, 181 Minn. 533, 233 N. W. 300, *supra,* should not be extended to cases where the husband and wife have actually been living in the same house during the period of conception. A proper respect for the sanctity of the marital relationship requires that the presumption of legitimacy be conclusive under such circumstances, except in the exceptional situations we have noted. The legitimacy of a child born to a married woman should not be permitted to totter because of the willingness of the husband to deny normal sexual conduct during a period in which they admittedly lived under the same roof and were alone except for the presence of their minor children. Authorities in support of our conclusion are cited in 7 Am. Jur., Bastards, § 43.

Reversed with directions to enter judgment in conformity with this opinion.

MAGNEY, JUSTICE (concurring specially).

I concur in the result.