MATHILDA MEEMKEN v. CECIL O'HARA.[1]

November 5, 1954.

No. 36,294.

[1]Reported in 66 N. W. (2d) 601.

*Lauerman, Johnson & Gustafson,* for appellant.
*Harry E. Burns* and *Sydney A. Gross,* for respondent.

DELL, CHIEF JUSTICE.

This is an action for damages arising out of a breach of promise to marry claimed to have been made in the spring of 1952. There was a verdict for the plaintiff for $10,000. Defendant appeals from an order denying his alternative motion for judgment notwithstanding the verdict or a new trial.

Only those facts will be stated which we deem necessary to a consideration of the issues involved, and pursuant to the well-established rule they will be stated in the light most favorable to the verdict.[2] The plaintiff, 34 years of age, first met the defendant in August 1945 in St. Cloud, Minnesota, at which time she was married and living with her husband. Defendant began taking plaintiff out regularly that fall, and from then on they had sexual relations on numerous occasions. In the fall of 1946 the plaintiff became pregnant. As a result of the pregnancy Virginia was born. Defendant occasionally gave plaintiff money, including some at the time of the birth of her child. After Virginia was born the parties continued their association and for periods of time saw each other daily. In March 1949 plaintiff left her husband and moved into an apartment in St. Cloud with her two children. While the defendant did not live in the apartment with the plaintiff, he paid the rent, furnished the groceries, and gave her $50 a month. A few months later defendant moved in with the plaintiff and her children at another home in St. Cloud. After again moving and living together elsewhere defendant finally built a house in St. Cloud. Plaintiff and defendant together selected the lot and planned the house. In December 1949 plaintiff, her children, the defendant, and defendant's child, Darlene, by a previous marriage moved into the home. Defendant paid all of the expenses of operating the home except

---

[2]Carpenter v. Birkholm, 242 Minn. 379, 65 N. W. (2d) 250.

that plaintiff paid for the telephone. While living together plaintiff and defendant repeatedly had sexual relations and for the most part shared the same bed.

In April 1950 plaintiff was divorced from her husband as a result of an action commenced by her in March 1949. In the fall of 1950 plaintiff again became pregnant as a result of which David was born. Thereupon defendant increased the monthly payment to plaintiff from $50 to $65.

Plaintiff testified that the defendant asked her to marry him in the spring of 1952 and that she accepted. She said that the wedding was to take place in California during Christmastime of that year. While plaintiff claims that other promises of marriage were also made, they are not involved in this action. Defendant denied that he promised to marry the plaintiff at all.

In 1953, following an argument, defendant asked plaintiff to leave the home but she refused. She was forced to do so under a court order in March 1953. Defendant has since married another woman. With minor variances the parties agree that the defendant's net worth is approximately $20,000 and that he has an annual income of approximately $7,000.

■ Considerable evidence was admitted over the objection of the defendant regarding sexual relations between the parties from 1945 to the time of the alleged promise to marry in 1952. The defendant assigns as error the rulings of the court admitting this evidence, contending first that evidence of illicit sexual relations is not relevant to prove a contract of marriage and, secondly, that much of the testimony concerns acts too remote in time to be material.

Generally evidence tending to show the relationship and conduct of the parties has probative force and is properly received in evidence to aid the jury in its determination of whether promises to marry were exchanged.[3] Although the precise point has not clearly

[3]Hahn v. Bettingen, 84 Minn. 512, 88 N. W. 10; Bischoff v. Harris, 198 Mich. 59, 164 N. W. 389.

been considered by this court,[4] there are cases from other juris-dictions holding that testimony of illicit intercourse is properly for consideration of the jury along with other evidence showing the conduct and relationship of the parties.[5] In the instant case the evidence complained of was expressly limited by the court to this purpose.

Cases expressing a contrary view do so, at least ostensibly, on the theory that evidence of the conduct of the parties, to be admissible, must be open and public as well as an ordinary and usual incident to a promise of marriage.[6] We fail to see any sound reason for so limiting the evidence. While this court does not condone the conduct of the parties here, that is not a sufficient basis for arbitrarily denying the jury the benefit of facts from which it may, together with other evidence, reasonably and fairly draw an inference of a promise to marry.

A more compelling reason for refusing such evidence appears from Wrynn v. Downey, 27 R. I. 454, 466, 63 A. 401, 405, 4 L.R.A.(N.S.) 615, relied on by the defendant, where the court stated:

"* * * But it can not be seriously urged that such circumstances [illicit intercourse] are ever introduced by a plaintiff except with the object of increasing damages. The record plainly shows that such was the intent in this case. A meritorious case could hardly

---

[4]This court, in Schmidt v. Durnham, 46 Minn. 227, 49 N. W. 126, apparently approved the introduction of testimony regarding sexual intercourse although the opinion does not show to what extent, if any, the point was considered.

[5]Morgan v. Muench, 181 Iowa 719, 156 N. W. 819; Fletcher v. Ketcham, 160 Iowa 364, 141 N. W. 916; Lowden v. Morrison, 36 Ill. App. 495; Chamness v. Cox, 131 Ind. 118, 30 N. E. 901 (not citing the earlier case of Felger v. Etzell, infra, footnote 6, to the contrary) ; see, Lauer v. Banning, 140 Iowa 319, 118 N. W. 446, approving this view but holding evidence of rape inadmissible.

[6]Felger v. Etzell, 75 Ind. 417; Wrynn v. Downey, 27 R. I. 454, 63 A. 401, 4 L.R.A.(N.S.) 615; see, Smith v. McPherson, 176 Cal. 144, 167 P. 875, L. R. A. 1918B, 66, where the court approved this view but held it did not apply when the man held the plaintiff out as his wife.

arise where the contract and the breach of it could not be proven by other evidence."

It cannot be denied that in some cases there may be danger of evidence of illicit relations having an unjustly inflammatory effect upon the jury. But oral contracts of marriage are seldom made in the presence of witnesses, and the aggrieved party must, of necessity, frequently rely on the circumstances surrounding the relationship to assist in proving the existence of the contract. The record before us fails to show any ulterior motive in introducing the questioned evidence and, in the absence of a showing to the contrary, it must be assumed that the plaintiff offered it in good faith and for the proper purpose. Nor do we feel that the fact that the testimony of illicit intercourse related back to a period seven years prior to the alleged promise to marry renders it inadmissible on the ground of remoteness. It is generally agreed that evidence of the relations of the parties from the inception of the courtship may be admitted to show the probability of the promise,[7] and in many cases the time involved has extended over a long period.[8] In this case the relationship was of a continuous nature, and it was proper for the jury to consider the circumstances under which it was conceived as well as its progress. While the plaintiff was married at the time she first met defendant and consequently was unable to enter into a valid contract to marry, this court held in Hahn v. Bettingen, 84 Minn. 512, 88 N. W. 10, that the relationship and conduct of the parties might, nevertheless, be introduced since it was relevant in showing the existence of a promise to marry at a subsequent time when plaintiff did have capacity to so contract.[9]

We conclude that it was not error to permit the introduction of evidence of prior sexual intercourse for the expressly limited purpose of showing the relations of the parties as bearing upon the existence of a promise to marry.

[7]Vaughan v. Smith, 177 Ind. 111, 96 N. E. 594; Bartholemew v. Billmeyer, 197 Iowa 861, 198 N. W. 51.

[8]*E.g.*, Merritt v. Leuck, 231 Iowa 777, 2 N. W. (2d) 49 (10 years); Dyer v. Lalor, 94 Vt. 103, 109 A. 30 (18 years).

[9]See, also, Morgan v. Muench, 181 Iowa 719, 156 N. W. 819.

■ The contract to marry and its breach were established primarily from the testimony of the plaintiff herself. Defendant contends that the plaintiff was so thoroughly impeached that her testimony is not worthy of belief and that therefore the evidence is not sufficient to sustain the verdict.

There was evidence which tended to impeach the plaintiff, but we are not prepared to say that it was so conclusive that fair-minded men could not reasonably believe her. That the jury, as trier of fact, is the sole judge of the credibility of the witnesses is a principle firmly established by this court.[10] Instances may arise occasionally where a witness's veracity has been so completely discredited that fair-minded men might reasonably come to but one conclusion.[11] Substantial justice in such cases might well require submission of the case to another jury. However this is not such a case. A careful study of the record satisfies us that the verdict is sufficiently supported by the evidence.

■ The defendant contends that the court erred in admitting, over objection, plaintiff's testimony as to the paternity of her child Virginia. Since the plaintiff was living with her husband at the time the child was conceived, the evidence was not admissible. In Haugen v. Swanson, 219 Minn. 123, 16 N. W. (2d) 900, this court held, in conformance with the prevailing view,[12] that where the husband and wife are living together in the same house the presumption of legitimacy could be rebutted only by showing the nonaccessibility of the husband during the period of gestation[13] or conceivably by certain scientific evidence of nonpaternity. Although the Haugen case involved an action for support, it seems obvious that the very purpose behind the presumption extends to the case at hand.

While the evidence was improperly received, the error committed did not substantially prejudice the rights of the defendant so as to

---

[10]Carpenter v. Birkholm, 242 Minn. 279, 65 N. W. (2d) 250; In re Psychopathic Personality of Dittrich, 215 Minn. 234, 9 N. W. (2d) 510.

[11]*E.g.*, Hill v. Jones, 109 Minn. 370, 123 N. W. 927.

[12]9 Wigmore, Evidence (3 ed.) § 2527.

[13]See, State v. Soyka, 181 Minn. 533, 233 N. W. 300.

require a new trial. An examination of the record reveals that subsequent to the introduction of the evidence complained of the plaintiff gave the following testimony:

"Q. Did you show him [the defendant] the baby?

"A. Yes, and he said the baby looked just like Darlene.

"Q. Who is Darlene?

"A. His daughter from his former marriage.

\* \* \* \* \*

"Q. On this occasion when he [the defendant] told your husband and what you have related to us here, did he talk further, say more?

"A. Yes, he did.

"Q. And what did he say?

"A. Well, he told me, told my husband that he was the father of Virginia and he didn't want any of his children or any one he loved living in an old house like we were living in."

This testimony, which placed the same information regarding the paternity of Virginia before the jury, was received without objection. This court has frequently held that once evidence is admitted without objection no prejudicial error results from other erroneous admissions even though proper objections are made.[14] While these cases have distinguishing features, the guiding principle is the same. Harmless error in the admission of evidence cannot be made the basis for a new trial.[15]

The rule that objections to essentially the same evidence need not be continually repeated[16] has no application in this case. Plaintiff's counsel was not pursuing the same line of inquiry and the testimony was wholly different in form from that previously objected to.[17] Consequently, even though the error here was prejudicial in the first instance, it was cured by the subsequent testimony received

---

[14]Manahan v. Jacobson, 226 Minn. 505, 33 N. W. (2d) 606; Hill v. N. P. Ry. Co. 210 Minn. 190, 297 N. W. 627.

[15]14 Dunnell, Dig. (3 ed.) § 7180.

[16]6 Dunnell, Dig. & Supp. § 9738; 1 Wigmore, Evidence (3 ed.) § 18, note 18.

[17]See, Drew v. Carroll, 120 Minn. 478, 481, 139 N. W. 953, 954.

146

without objection. In addition it is noted that testimony concerning the paternity of the child David, properly admitted by the court, greatly reduced the significance of the evidence here involved.

■ A substantial effort was devoted to an unsuccessful attempt by the defendant to introduce in evidence certain time records of the defendant's employer for the purpose of corroborating defendant's testimony that he was not at home at the time the alleged promise was made. While the documents appear to qualify as business entries under the uniform business records as evidence act,[18] we do not feel the court abused its discretion in refusing their admission. The records offered generally show the hours equipment supervised by defendant was on certain jobs. Testimony was adduced from both the custodian and the defendant that the documents did not necessarily prove that the defendant was at any certain place at a specific time. The trial court apparently concluded that under such circumstances the records did not have sufficient probative value to be placed before the jury. Questions of materiality and relevancy rest largely in the discretion of the trial court and its determination must control unless practical justice requires otherwise.[19] It is not necessary for us to decide whether the jury in this case could have drawn any reasonable inferences from the proffered evidence bearing upon the facts in issue. Suffice it to say that the admissibility of the time records presented a doubtful question to be resolved by the trial court.

■ Defendant further urges that a new trial should be granted because the verdict is excessive. There should be a new trial only if the damages awarded are manifestly the result of the jury's passion or prejudice.[20] There is no fixed standard for the jury to follow in assessing damages in these cases.[21] It had competent evidence of defendant's net worth and annual income. Considering

[18]M. S. A. 600.01, et seq.

[19]Cases collected in 7 Dunnell, Dig. (3 ed.) § 3251.

[20]Halness v. Anderson, 110 Minn. 204, 124 N. W. 830; 14 Dunnell, Dig. (3 ed.) § 7134.

[21]Kugling v. Williamson, 231 Minn. 135, 42 N. W. (2d) 534; Hahn v. Bettingen, 81 Minn. 91, 83 N. W. 467, 50 L. R. A. 669.

plaintiff's reasonable expectations and the obvious losses which she suffered, the size of the verdict does not indicate any abuse of the jury's exercise of sound judgment nor of the trial court's wide discretion in determining whether the verdict was excessive.[22]

The defendant has assigned numerous other errors but has not argued them. They are therefore deemed waived,[23] and in any event they are without merit and need not be discussed.

Affirmed.

[22]Cameron v. Evans, 241 Minn. 200, 62 N. W. (2d) 793.

[23]Kugling v. Williamson, 231 Minn. 135, 42 N. W. (2d) 534.