FRIEDA POYNTER v. FRED ALBRECHT.

123 N. W. (2d) 355.

August 9, 1963—No. 38,830.

246

*K. L. Wallace,* for appellant.

*I. L. Swanson,* for respondent.

OTIS, JUSTICE.

This action for breach of promise to marry resulted in a verdict of $20,000. The trial court granted defendant's motion for judgment notwithstanding the verdict and ordered that a new trial be had on all issues if its order was reversed, vacated, or set aside. Plaintiff appeals from all of the order and seeks to have the verdict reinstated without a new trial.

Viewing the evidence in the light most favorable to plaintiff, the jury could accept her version of the facts as follows:

In the fall of 1953, plaintiff, a widow 48 years of age with two dependent children, became acquainted with defendant, then 55 years of age. Defendant had responded to an advertisement in which plaintiff's son sought work as a farmhand. Plaintiff claims she visited defendant's farm in the winter of 1954 and that after calling on her four or five times defendant proposed marriage to her and she accepted. However, during the summer of 1954 she discovered defendant was still married. The divorce was heard in October 1954, but for some undisclosed reason the decree was not entered until April 15, 1955. It is plaintiff's contention that when she consented to move in with the defendant on November 8, 1954, she did so with the understanding that within a year their marriage would be consummated. Plaintiff concedes that defendant was thereafter evasive when pressed for a fulfillment of his obligation until suddenly he became so ill in January 1959 he seriously doubted he would survive. Defendant admitted that at 4 a. m. on January 31, 1959, he executed what purported to be a holographic will, in the following words, "I am very sick, and I am willing all of my property to Frieda Poynter." Subsequently plaintiff accompanied defendant to Fergus Falls on a number of occasions for medical treatment.

Plaintiff testified that on one such trip she advised defendant she was going to leave the farm and get a different job when school was out that spring, to which defendant responded, "If I get well, I will promise you we will get married before school is out." Defendant failed to honor this commitment, and plaintiff testified she only remained on the farm (until September 1960) in order to work off an indebtedness arising out of a loan made to her by defendant for the purchase of an automobile. She began with a salary of $17.50 a week and received one $10 raise. One subsequent proposal in December 1959 was refused by plaintiff because, she asserted, it was made on condition she agree to forego any property rights in the event the marriage terminated in divorce.

Defendant denies any proposal prior to December 1959, but testified he intended to marry her after that time if he survived his illness. It is his contention that the proposal he then made and one made after the action was begun were unconditional and were refused. He concedes that from the spring of 1954 until December 1959 he frequently shared the same bed with plaintiff, and the evidence permits a finding that socially and domestically and for practical purposes they lived as husband and wife.

■ Plaintiff asserts as her theory for recovery that she and defendant agreed on numerous occasions to be married within a year of November 8, 1954, and that defendant renewed his promise of marriage from time to time until December 20, 1959. The trial court was reluctant to submit the case to the jury because he was of the opinion that mutual promises of marriage prior to the date of defendant's decree of divorce on April 15, 1955, were absolutely void and could not be renewed after plaintiff had knowledge of the facts. In his instructions the court pointed out that plaintiff discovered in July 1954 defendant was still married and charged that her cause of action accrued at that time. Since she did not bring her suit until November 1961, the court held that she was barred from any claim unless a new cause of action arose after November 1955. The court had grave misgivings about the sufficiency of the evidence to prove a new proposal and acceptance within the 6-

year period of limitations, but consented to submit the case with the understanding he would very likely grant judgment n. o. v. if plaintiff prevailed.

We hold that there was sufficient evidence to sustain the verdict and that it was error to grant defendant's motion.

Actions based on breach of promise have met with growing disfavor in the courts and legislatures and have been abolished by statute in a number of states.[1] Very often such verdicts simply render a moral judgment which punishes the defendant and rewards the plaintiff for their illicit relationship rather than determining objectively and dispassionately whether a valid marriage contract was contemplated. Whatever our personal views may be, we have held that it is proper to receive evidence of the origin and progress of the parties' acquaintance during the period when one of them is already married, since such testimony has a bearing on the probability of a subsequent offer when the parties have legal capacity to marry.[2] That an action may not be predicated on a promise of marriage by a party who is under the legal impediment of an existing marriage is not disputed.[3] We need not decide whether the acceptance of an invalid proposal of marriage may be revived when the parties are no longer under any disability; nor is it necessary that we adopt the rule that mutual promises of marriage may be inferred from the facts and circumstances attendant upon the relationship of the parties without proof of an express promise,[4] for in the instant case we find there was sufficient evidence of an express agreement when the parties were free to contract to require that the case be submitted.

[1]Annotation, 73 A. L. R. (2d) 557, footnote 1; Hibschman, *Can "Legal Blackmail" Be Legally Outlawed?*, 69 U. S. L. Rev. 474; Brown, *Breach of Promise Suits,* 77 Pa. L. Rev. 474, 490; 49 Harv. L. Rev. 648.

[2]Hahn v. Bettingen, 84 Minn. 512, 514, 88 N. W. 10, 11.

[3]Meemken v. O'Hara, 243 Minn. 138, 143, 66 N. W. (2d) 601, 604; Restatement, Contracts, § 588.

[4]Morgan v. Muench, 181 Iowa 719, 727, 156 N. W. 819, 822; McKenzie v. Truesdale, 284 Mass. 116, 119, 187 N. E. 117, 118; Anderson, *Can Breach of Promise to Marry be Implied from Conduct?,* 11 Journal of Kan. Bar Assn. 361.

If the jury adopted plaintiff's version of defendant's alleged proposal following his illness in January 1959, they were justified in rendering a verdict in plaintiff's favor. In arriving at their determination, they had a right to take into consideration all of the events which had transpired from and after the fall of 1953.

█ Plaintiff asserts that her appeal is from the "whole" order of the district court, including that part which grants a new trial on all issues. In support of her position plaintiff cites a number of cases for the proposition that an order not otherwise appealable may be reviewed if it is a part of an appealable order. Without attempting to reconcile or distinguish these decisions, we hold that in the instant case that part of the lower court's order which grants a new trial on all issues is not appealable. Under Rule 50.02, Rules of Civil Procedure, and Minn. St. 605.06, it was clearly the duty of the court to pass on both the motion for judgment n. o. v. and the motion for a new trial.[5] Notwithstanding the efforts of the bench and bar to secure a revision of the law to permit a review of discretionary orders granting a new trial, the legislature has not seen fit to act. Minn. St. 605.09(4) allows appeals from an order granting a new trial only "if the court expressly states therein, or in a memorandum attached thereto, that the order is based exclusively

---

[5]Godeen v. Bennett, 265 Minn. 179, 120 N. W. (2d) 867.

Rule 50.02(2), Rules of Civil Procedure, provides as follows: "A motion for judgment notwithstanding the verdict may include in the alternative a motion for a new trial. When such alternative motion is made and the court grants the motion for judgment notwithstanding the verdict, the court shall at the same time grant or deny the motion for a new trial, but in such case the order on the motion for a new trial shall become effective only if and when the order granting the motion for judgment notwithstanding the verdict is reversed, vacated, or set aside."

The applicable portion of Minn. St. 605.06 provides: "If the motion for judgment notwithstanding the verdict be denied, the supreme court, on appeal from the judgment, may order judgment to be entered, when it appears from the testimony that a verdict should have been so directed at the trial; and it may also so order, on appeal from the whole order denying such motion when made in the alternative form, whether a new trial was granted or denied by such order."

upon errors of law occurring at the trial, and upon no other ground." Here no such statement accompanied the order. In a number of recent cases we have made it clear that the combining of an order which is reviewable with one which is not, does not permit the provisions of § 605.09(4) to be bypassed and thereby render an otherwise nonappealable order appealable.[6] Adhering to these decisions, we therefore decline to review the "whole" of the order and dismiss the appeal as to that part which grants a new trial on all issues.

Reversed and remanded.

---

[6]Laramie Motors, Inc. v. Larson, 253 Minn. 484, 486, 92 N. W. (2d) 803, 805; Satter v. Turner, 257 Minn. 145, 158, 100 N. W. (2d) 660, 669; Gothe v. Murray, 260 Minn. 181, 188, 109 N. W. (2d) 350, 354; Koenigs v. Werner, 263 Minn. 80, 83, 116 N. W. (2d) 73, 75; Godeen v. Bennett, 265 Minn. 179, 120 N. W. (2d) 867.