MARJORIE E. CURRY v. KENNETH PATRICK FELIX.

149 N. W. (2d) 92.

February 24, 1967—No. 40,253.

---

*Frank J. Collins* and *Frank J. Donahue,* for appellant.

*George M. Scott,* County Attorney, and *Douglas X. Juneau* and *Ronald W. Thomas,* Assistant County Attorneys, for respondent.

NELSON, JUSTICE.

This proceeding was initiated by respondent, Marjorie E. Curry, in the Circuit Court of Milwaukee County, Wisconsin, under the Uniform Reciprocal Enforcement of Support Act[1] to compel appellant, Kenneth

---

[1] See, 9C U. L. A. 13. Minn. St. 518.41 to 518.52 constitute the Minnesota Reciprocal Enforcement of Support Act.

Patrick Felix; from whom she was divorced in 1951, to pay for the support of a minor child, Charles Clayton Felix, born August 24, 1947. After a hearing on the petition the District Court of Hennepin County in an order entered November 16, 1965, ordered appellant to pay $10 per week for such support. This appeal is from an order entered January 6, 1966, denying a motion to vacate the November 16 order and dismiss the proceeding or to grant appellant a new trial.

Petitioner and appellant were married January 18, 1947, at Minneapolis, Minnesota. Petitioner was granted a divorce by the Hennepin County District Court April 3, 1951, at which time both parties were residents of Minnesota. A stipulation made and filed in the divorce proceeding provided that petitioner should have the "care, custody and control of the minor child of the parties," appellant to have reasonable rights of visitation. The stipulation further provided that appellant should pay petitioner $10 a week "as and for alimony and support money" and that appellant consented to trial of the divorce action as a default matter and waived any further notice with regard thereto. The decree incorporated the provisions of the stipulation with respect to custody and support.

■ Following the divorce petitioner removed the child from the jurisdiction of the Minnesota court, thereby defeating any right appellant, the divorced husband, had to the visitation of said child. See, Eberhart v. Eberhart, 153 Minn. 66, 189 N. W. 592; Anderson v. Anderson, 207 Minn. 338, 291 N. W. 508; Iverson v. Iverson, 243 Minn. 54, 66 N. W. (2d) 549; Hasse v. Hasse, 232 Minn. 234, 45 N. W. (2d) 383. The effect of such a removal on a father's obligation to support a child was considered in State ex rel. Shannon v. Sterling, 248 Minn. 266, 274, 80 N. W. (2d) 13, 19, a leading case construing the Uniform Reciprocal Enforcement of Support Act. Referring to Eberhart and other cases cited above, we said:

"Under the holding of the Iverson and Hasse cases it follows that although a father, whose right of reasonable visitation under an original divorce decree has been defeated by the act of the wife in wrongfully removing the children from the jurisdiction, is relieved from the payment of support installments which have already accrued, *he is not so*

*relieved as to future payments of support if the trial court, in the exercise of a sound discretion, amends the original decree with respect to his right of visitation and so as to permit the wife to reside with the children outside the state."*

We held in the Sterling case that the county attorney representing a petitioner in support-enforcement proceedings has authority to apply to the court for a modification of the visitation and custodial provisions of the final decree to the extent necessary to permit an enforcement of the alleged duty of future support. Therefore, if it is determined that appellant is the father of petitioner's child, principles of that case will apply to the issue of his liability to make future support payments.

The Uniform Reciprocal Enforcement of Support Act, which has been adopted by all states except New York,[2] provides that any person who believes he is owed a duty of support (the obligee) may file a petition in a court of the state of his residence (the initiating state). If the court finds a duty to support and that a court of another jurisdiction (the responding state) may obtain jurisdiction over the alleged obligor or his property, the supporting documents (certified copies of the complaint, the initiating court's certificate, and the act) will be forwarded to the court of the responding state. If that court also finds a duty of support, it may order the obligor to furnish support. The purpose of the uniform act is to enable two states by reciprocal legislation and joint action to cooperate effectively in compelling a parent located in one state to furnish support for dependent children located in the other state. See articles by W. J. Brockelbank in 37 A. B. A. J. 93 and 17 Mo. L. Rev. 1.

■ Appellant claims that Charles Clayton Felix is not his son; that shortly after the divorce petitioner remarried and moved to Denver, Colorado; and that he did not know the whereabouts of petitioner until he was served with the order to show cause in this proceeding, some 14 years after the entry of the divorce decree.

It appears from the certificate forwarded by the Wisconsin court that petitioner when testifying in support of the petition was asked the following question:

---

[2] See, 9C U. L. A. 1.

"Q. Were any children born of this marriage [petitioner's marriage to appellant]?

"A. No, but he accepted Charles as his own and agreed to support him."

She also testified that the Minnesota court in the divorce action had ordered $10 a week support for Charles. The divorce decree requires that the defendant (appellant) pay the plaintiff (petitioner) $10 a week as alimony and support money. The stipulation also provided for $10 a week as alimony and support money. Both the decree and the stipulation say that plaintiff shall have the "care, custody and control of Charles Clayton Felix, the minor child of the parties" herein. Both signed the stipulation, so petitioner in testifying under oath that there were no children born to petitioner and appellant to that extent repudiated the stipulation.

While there are no Minnesota cases directly on the point involved in the instant case, this court's approach can be seen by considering past cases dealing with the legitimacy presumption. To begin with, this court in State v. Soyka, 181 Minn. 533, 233 N. W. 300, 15 Minn. L. Rev. 348, laid down the rule that "[t]he presumption of the legitimacy of a child conceived during wedlock, while strong, is not conclusive," and further held:

"Under our statute [Minn. St. 595.02] making all persons of sufficient understanding competent to testify in all actions or proceedings, husband and wife are competent to give evidence that the former is not the father of a child of the wife conceived before the dissolution of the marriage by divorce."

In Haugen v. Swanson, 219 Minn. 123, 16 N. W. (2d) 900, plaintiff sought a decree that the person to whom she was married at the time of conception was the father of a child born after dissolution of the marriage by divorce. Defendant lived in the same house with plaintiff about 2 weeks of the 40 days during which conception could have occurred, but he denied plaintiff's assertions that he had the intercourse with her during this time. Evidently because of considerable evidence of plaintiff's bad reputation for truthfulness, the jury found for defendant. This court reversed, saying (219 Minn. 126, 16 N. W. [2d] 902):

"* * * The fact that the parties while still husband and wife occupied the same dwelling house in March and April being admitted, the other circumstances proved were not such as to afford any clear and satisfactory proof—sufficient to overcome the 'strong' presumption to the contrary—that there was no sexual relationship between the parties during the period in which conception took place. * * *

"Conceivably, there may arise cases where all possibility, or at least all reasonable probability, of the husband's parenthood of his wife's child will be excluded by proof of miscegenation, or of his impotency, or of the negative results of reliable blood tests by impartial physicians. But, absent proof of such character, the rule of State v. Soyka * * * should not be extended to cases *where the husband and wife have actually been living in the same house during the period of conception.* A proper respect for the sanctity of the marital relationship requires that the presumption of legitimacy be conclusive under such circumstances, except in the exceptional situations we have noted. The legitimacy of a child born to a married woman should not be permitted to totter because of the willingness of the husband to deny normal sexual conduct during a period in which they admittedly lived under the same roof and were alone except for the presence of their minor children." (Italics supplied.)

Meemken v. O'Hara, 243 Minn. 138, 66 N. W. (2d) 601, is similar, except that the rule's impact upon admissibility of evidence was made explicit. In that case, plaintiff sued defendant for breach of promise to marry. The court held it error, but under the circumstances not prejudicial, to allow plaintiff to testify that defendant was the father of her child, since at the time of the child's conception she was living with her then husband and there was no showing of nonaccessibility nor scientific evidence of the husband's nonpaternity.

We think it clear that the decisions of this court support the proposition that the presumption of legitimacy arising from birth in wedlock of a child conceived before the marriage is rebuttable in nature. According to Annotation, 57 A. L. R. (2d) 729, 739:

"Even in the absence of a controlling statute, the courts are not in agreement as to the nature of the presumption of legitimacy in favor of

a child conceived before marriage arising from its birth after the marriage of its mother. Most of the courts before whom the question has arisen have held or recognized that the presumption is rebuttable, while a few courts have held it to be conclusive. In some jurisdictions the nature of the presumption is defined as either rebuttable or conclusive by the statute creating it."

Among the cases cited as holding that in the absence of statute, or without reference to any statute, the presumption of legitimacy arising from birth in wedlock of a child conceived before the marriage is rebuttable in nature is State v. E. A. H. 246 Minn. 299, 75 N. W. (2d) 195.

In speaking of the proof necessary to overcome the presumption, the courts have made numerous statements, varying in phraseology but not in substance, respecting the sufficiency of the evidence. Some courts have stated that the presumption may be rebutted by proof showing the impossibility of the husband's being the father of the child. See, Annotation, 57 A. L. R. (2d) 729, 742.

The only Minnesota case where the mother was unmarried at the time of conception is State v. E. A. H. *supra*. In that case this court determined that there is a presumption of legitimacy even though the child was conceived prior to marriage. This court stated that *where husband and wife have intercourse prior to marriage and during the possible period of conception, the presumption as to the legitimacy of the child born during wedlock is the same as the presumption arising from conception during wedlock.* While the case is somewhat unclear on this point, it nevertheless seems to accept the proposition that, unlike the situation where the period of conception is during the marriage, it must be shown that the husband had intercourse with plaintiff during such time.[3]

---

[3] The court stated (246 Minn. 307, 75 N. W. [2d] 201) that the presumption is "just as strong as that in the situation found in the Haugen case, especially where the husband was aware of his wife's pregnancy before marriage and there is proof that he had intercourse with the mother during the possible period of conception." The court's further statement (246 Minn. 308, 75 N. W. [2d] 201) also seems enlightening: "Appellant also asserts that the findings of fact upon which the presumption rests are not justified by the evidence and in so doing attacks findings * * * that the

Other courts have indicated that it is open to defendant to show he did not have intercourse during such time. See, Hibbard v. Commonwealth, 250 Ky. 431, 63 S. W. (2d) 480; Clark v. State, 208 Md. 316, 118 A. (2d) 366, 57 A. L. R. (2d) 718; cf. Dennison v. Page, 29 Pa. 420 (clear proof of no intercourse necessary). In State v. E. A. H. *supra*, the presumption was in fact employed to determine that the husband and not the defendant, with whom plaintiff had also had sexual relations during the period of conception, was the father. But see, Mims v. State, 43 Ga. App. 100, 157 S. E. 901.

In Mund v. Mund, 252 Minn. 442, 90 N. W. (2d) 309, the court held that the presumption of legitimacy continues in the face of a divorce court's finding that there were no issue of a marriage, where a child was born about two months after the parties' marriage and the finding in question was made in a default divorce proceeding. The court stated that the acts of the parents in allowing the finding to be made cannot deprive the child of the right to support from the father. The case was sent back for a hearing on the issue of paternity.

It would thus appear that where appellant married petitioner subsequent to the time of conception, if it is not her burden to prove appellant had relations with her during such time, at least it is open to him to prove he did not do so.

The order appealed from is accordingly reversed and the case is remanded to the court below for proceedings to determine whether appellant is the father of the child and for such further proceedings as may be required in accordance with this opinion.

Reversed and remanded.

ROGOSHESKE, JUSTICE (concurring specially).

I agree with the result but would point out that the proceedings are governed by the Uniform Reciprocal Enforcement of Support Act and that the fatal defect is the failure of the district court of Minnesota, as the responding state, to make a finding based upon the evidence presented that defendant owed a duty to support a minor child, who, under his

complainant's husband had intercourse with her during the possible and probable period of conception * * *."

claim of nonfatherhood, would not be an "obligee" as defined by Minn. St. 518.42, subd. 9. Section 518.48, subd. 5, expressly requires such a finding by the court of the responding state before a duty to support can be enforced.

Mr. Justice Peterson, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.